[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff husband against the defendant wife. The parties were married on December 31, 1994, in Bridgeport, Connecticut, just two days after the defendant arrived in the United States from Haiti. The plaintiff had arranged for her immigration from Haiti as his future bride.
The parties have two minor children issue of their marriage: Isabelle born September 5, 1995, and Stefan born June 15, 1998. Shortly after Stefan was born, in September, 1998, the parties separated and have been CT Page 11211 separate and apart since that date.
It is clear from the evidence that the marriage of the parties has broken down irretrievably. Each of the parties have their version of what happened in the marriage. Simply stated, it can best be said that the marriage deteriorated the last year of the marriage, and it is destroyed beyond hope of reconciliation. The court does not attribute fault to either party.
The plaintiff is employed by the Connecticut Department of Labor. He has a bachelor's degree from the University of Bridgeport and a master's degree in finance from Sacred Heart University. He is an accountant and as such is a field auditor. He earns $43,500 per year in this position. He is 43 years of age and in good health.
The defendant is 33 years of age. She is employed at Cambridge Manor in Bridgeport as a certified nursing assistant. She works from 11:00 p.m. to 7:00 a.m. and takes care of the children and attends hairdresser's school during the day. Isabelle, the oldest child, entered kindergarten this fall and attends Assumption School in Fairfield. The tuition for Assumption School is $315 per month. Her expense for child care is $35.00 a day or $140 per week. The defendant is most fortunate to find an individual who sleeps in with the children each night thereby permitting the defendant to go to work.
The defendant has her high school degree and a Bachelor of Arts degree in Business Administration which she achieved in Haiti. She worked full time in Haiti, her last job working for the Haitian Prime Minister. Her health is good except for high blood pressure. She is on two medications for her high blood pressure. These prescriptions are costing her $47.00 per month.
The defendant has accomplished much since she has been in the United States. She went to school to learn English. Thereafter, she went to nursing school to become a certified nurse's assistant. She now is attending hairdresser's school and will complete this course in June, 2001. The defendant's weekly expenses are actually $509 including $23.00 toward her indebtedness rather than the $634 she reports in her financial affidavit. The amount she shows as an expense for nursery school is not being incurred at this time; although it does not appear she has included the Assumption School tuition which on a weekly basis amounts to $73.25. She may, however, be receiving financial assistance.
The child support guidelines provide for a presumptive support of $182 per week to be paid by the plaintiff to the defendant for the support of the two minor children plus 46 percent of the defendant's child care CT Page 11212 expenses of $140 or $64.00 per week. (See subsection (h) of section 46b-215a-2a of the Child Support Guideline Regulations.)
Each of the parties have presented financial affidavits reporting the very barest of expenses. Plaintiff reports food expense of $10.00 per week and no expenses for clothing. His car expense is $40.00 per week for gas and oil and $20.00 per week for repairs. Defendant reports food expenses at $69.00 per week, clothing at 14.00 and housing expenses at meager amounts.
There are three main issues between the parties. One of these is an award of alimony. Should the court follow the child support guidelines, the plaintiff will be paying child support in an amount of $182 per week plus $10.00 per week on the arrearage of $1,726 as of February 26, 1999. (See defendant's exhibit 7.) That arrearage now should be somewhat less than $1,000. Then adding the plaintiff's contribution to the child care expenses, the weekly amount is $256. With a weekly net income of $533, it is impossible for the plaintiff to manage with a $50.00 per week alimony order as requested.
With regard to a property settlement, the plaintiff has a United States Postal Service 401(k) plan with a value of $23,772. He had worked in the postal service from 1993 to 1998. He has proposed an equal split of this account. The defendant has proposed an assignment of 60 percent of this account to her. Considering all of the factors of § 46b-81 of the General Statutes, it is the court's opinion that plaintiff's proposal is eminently fair in view of the length of the marriage and considering, also, the plaintiff's consequential indebtedness.
Finally, the plaintiff seeks overnight visitation with the minor children. The defendant is opposed to overnight visitation because of the tender age of Stefan who is but two years and close to three months. He is still in diapers and is not used to sleeping other than in his own crib except in the event of emergencies. The parties were referred to the Family Relations unit for mediation on the issue of custody and visitation on December 2, 1999. On December 21, 1999, they met with Family Relations and reached an agreement on joint legal custody with the mother's home identified as the children's primary residence and visitation was agreed upon, however, without overnights. That mediation provided "the father's request for overnight visitation needs the direct attention of the court." Having considered the provisions of § 46b-56
and the best interests of these two young children at this time, the court is of the opinion that Stefan, particularly, is too young for overnight visitations. The issue of overnight visitations shall be revisited by the court in two years. Plaintiff should raise the issue at that time by appropriate motion. However, if the parties have reached an CT Page 11213 agreement on this issue, the matter need not be called to the court's attention.
In determining the proper orders in this case, the court must consider the factors of § 46b-81 and § 46b-82 of the General Statutes together with the provisions of § 46b-62 dealing with attorney's fees. Considering the length of the marriage and the defendant's employability, this is not a case for alimony, even an order for nominal alimony for an extended period of time. As already noted with respect to a division of property, the plaintiff's proposal is certainly fair.
The court has considered all of the factors of § 46b-81 and §46b-32 of the General Statutes together with all of the evidence, the parties' financial affidavits, the parties' claims for relief and the applicable case law. The court finds that there is the requisite jurisdiction, that the allegations of the complaint have been proved and are true, that there has been an irretrievable breakdown of the marriage and that neither party is at fault for that breakdown.
The court enters the following orders:
1. A decree of dissolution of the parties' marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. The parties shall share joint legal custody of the minor children, Isabel, born September 9, 1995, and Stefan, born June 15, 1998, with the children's primary residence with the mother.
3. The father shall have parenting time with the minor children every Wednesday from 5:00 p.m. to 7:00 p.m. and alternating Saturdays from 9:30 a.m. to 6:00 p.m. and Sundays from 9:00 a.m. to 5:00 p.m. The plaintiff father shall be responsible to pick up the children and the defendant mother shall be responsible to retrieve the children at the assigned times.
4. The parties shall alternate the holidays, except that every Christmas Eve shall be with the father and the children shall be returned to mother's home that evening and spend every Christmas Day with the mother.
5. The defendant shall give ninety (90) days notice in writing to the plaintiff if she intends to move the children's permanent residence outside the state of Connecticut.
6. The plaintiff shall pay child support in the amount of $182 per week in accordance with the orders of the Magistrate Court plus $10.00 per CT Page 11214 week on the arrearage of $1,726 determined as of February 26, 1999 and payable to the State of Connecticut also as ordered by the Magistrate Court. That court has entered an order for wage withholding which shall continue in full force and effect. The order of the Magistrate's division is in accordance with the Child Support Guidelines. In addition, the plaintiff shall pay to the defendant 46 percent of her day care expenses which, at present, amount to $140 per week. The plaintiff shall pay to the defendant the sum of $64.00 per week commencing September 15, 2000 and weekly thereafter by a direct payment to her of said amount.
7. The plaintiff shall have the benefit of the dependency exemptions for federal and state income tax purposes for both of the minor children for so long as he is obligated to pay support.
8. The plaintiff shall maintain medical insurance for the benefit of the minor children as such insurance is provided through his employer. The parties shall split equally the cost of the unreimbursed medical, dental, orthodontia, psychological, psychiatric and any similar expense incurred by or on behalf of the minor children. The defendant shall have the benefit of the provisions of § 46b-84
(e) of the General Statutes.
9. The plaintiff shall name the defendant as primary beneficiary and the minor children as secondary beneficiaries on his existing life insurance policy through his employer in the amount of $38,000. The designation of the defendant as primary beneficiary shall continue only so long as the plaintiff is obligated to pay alimony. Thereafter, the children shall be named as irrevocable equal beneficiaries for so long as the plaintiff is obligated to pay support. The plaintiff shall supply a certificate from his employer to the defendant annually in January of each year evidencing the plaintiff's compliance with the requirements of this paragraph.
10. The plaintiff shall pay the sum of $1.00 per year as periodic alimony to the defendant. Said alimony shall terminate upon the earliest to occur of the following events: the death of either of the parties, the remarriage of the defendant, the defendant's cohabitation as defined by the provisions of § 46b-86 (b) of the General Statutes or September 15, 2005. This order shall be nonmodifiable as to term.
11. The plaintiff shall assign and transfer to the defendant the sum of $11,886 of his United States Postal Service 401(k) account to an IRA account to be established by the defendant. Such tax consequences as occur on any subsequent withdrawal from the IRA account by the defendant shall be wholly her responsibility.
12. Such tangible personal property as is in the possession of each of the parties shall be the property of the possessor free of any claim or demand by the other party.
13. The plaintiff shall retain the 1988 Mitsubishi Gallant and the defendant shall make no claim to said vehicle. The plaintiff shall indemnify and hold the defendant harmless from any and all expenses related to said vehicle.
14. The defendant shall retain the 1993 Ford Tempo and the plaintiff shall make no claim to said vehicle. The defendant shall indemnify and hold the plaintiff harmless from any and all expenses related to said vehicle.
15. The People's bank account and State of Connecticut pension as listed in the plaintiff's financial affidavit shall be wholly his free of any claim or demand by the defendant.
16. The People's bank accounts and the Fleet savings and checking accounts listed on the defendant's financial affidavit and about which she testified shall be wholly hers free of any claim or demand by the plaintiff.
17. The plaintiff shall provide proof of his compliance with the court order of December 2, 1999, regarding his reinstatement of the defendant on his medical and dental insurance plan through his employer. Any medical bills incurred by the defendant to the date hereof shall be reimbursed to her to the extent of any insurance reimbursement. The plaintiff shall cooperate with the defendant so that she may obtain continued medical insurance through his medical insurance plan in accordance with the provisions of 38a-538 of the General Statutes at her expense should she choose to do so.
18. Each of the parties shall be responsible for the debts listed on his or her financial affidavit and shall indemnify and hold harmless the other party from any claim or demand thereon.
19. Each of the parties shall pay his or her own attorneys fees.
20. The defendant's birth name, Marie Calixte, shall be restored to her and she shall hereafter be known by such name.
EDGAR W. BASSICK, III JUDGE TRIAL REFEREE CT Page 11215